**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN J. MCCARTHY,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Civil Action No.: 2:13-cv-05618 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

## I.    INTRODUCTION

John J. McCarthy ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff applied for supplemental security income ("SSI") under Title XVI from the Social

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

Security Administration ("SSA") on May 13, 2010. (R. 68.) Plaintiff alleged disability beginning April 1, 2005. (Id.) In his initial application for disability, Plaintiff claimed disability due to bipolar disorder, intermittent explosive disorder, memory loss and depression. (R. 68-69.) Plaintiff's claim was initially denied on September 17, 2010. (R. 94-98.) On reconsideration, Plaintiff alleged worsening depression. (R. 189.) Plaintiff's claim on reconsideration was denied on January 22, 2011. (R. 102-104.) On February 18, 2011, Plaintiff requested a hearing before an ALJ. (R. 105-106.) The ALJ held a hearing in this matter on March 12, 2012. (R. 36-67.) In a written opinion dated May 16, 2012, the ALJ determined that Plaintiff was not disabled. (R. 17-34.) The Appeals Council denied review on April 5, 2013, rendering the ALJ's decision the final judgment of the Commissioner. (R. 1-3.) Plaintiff timely filed this action.

    **B.**    **Personal and Employment Background**

    Plaintiff was 47 years old at the onset date of his alleged disability. (R. 68.) He is currently 57 years old, lives alone in Hackensack, New Jersey and has no children. (R. 40.) Plaintiff supports himself through General Assistance, Section 8 Housing and Medicaid. (R. 42.) He received a GED. (R. 40, 159.) He also took a business course in which he learned Microsoft Word and Power Point in 2006. (R. 160.) Plaintiff's submitted employment history includes employment as: (1) a customer service representative for sporting events/Ticket Master from December 1999 to March 2000; (2) an enumerator for the Census Bureau from 1999 to December 2000; (3) a customer service representative in the financial services industry from December 2003 to March 2004; and (4) a liaison for a sports memorabilia company from May 2004 to April 2005. (R. 77, 89-90, 160, 165-169.)

    The Vocational Expert ("VE") at Plaintiff's hearing before the ALJ characterized Plaintiff's past fifteen years of work in various customer service jobs and sales positions as

sedentary and semi-skilled.  (R. 60.)

### C.    Medical Background

Plaintiff claimed disability due to bipolar disorder, intermittent explosive disorder, memory loss and depression.  (R. 68-69).[2]  Plaintiff first sought treatment for his mental health issues from Vantage Health Systems in August 2009.  (R. 319.)  As a patient at Vantage Health Systems, Plaintiff saw therapist Hetty Hirshman at least once per week for individual therapy sessions and met once a month with treating psychiatrist Dr. Shani Stein for medication monitoring and therapy.  (R. 256-272, 275-318.)

On April 19, 2010, Dr. Stein completed a report in which she diagnosed Plaintiff with bipolar disorder II, intermittent explosive disorder and depression.  (R. 268.)   She noted that at times Plaintiff had difficulty concentrating and remembering things.  (Id.)  In the employment evaluation section of the report, Dr. Stein indicated that Plaintiff could not work for twelve months, but that he could participate in a part-time Work First New Jersey[3] work activity.  (R. 269.)  Dr. Stein also indicated that the length of disability extended from April 19, 2010 to April 19, 2011.  (Id.)

Plaintiff's treatment at Vantage Health Systems is documented in progress notes from Plaintiff's individual psychotherapy sessions with Dr. Stein and Hirshman from June 1, 2010 through January 31, 2012.  (R. 256-272, 275-318.)  Over the course of Plaintiff's treatment, he was prescribed Seroquel 300 mg, Wellbutrin XL 300 mg, Ambien 10 mg, Restoril 15-30 mg Buspar 10-15mg and Adderall 15 mg.  (R. 257, 259, 299, 314.)  Although some notes indicate

---

[2] Physically, the Plaintiff was diagnosed in April 2010 with Hashimoto's Thyroiditis and treated for this with a prescription for levothyroxine. (R. 223-241.)
[3] Work First New Jersey is New Jersey's welfare reform program.  See http://www.state.nj.us/humanservices/dfd/programs/workfirstnj/.

Plaintiff's continuing depression, anxiety, low energy and anger (R. 304, 308, 309, 317-318), the notes also indicate that when taken properly, the prescribed drugs improved Plaintiff's condition. He reported sleeping better and having better energy and concentration. (R.257, 262, 264, 266, 278, 282, 303.) Taking Wellbutrin improved Plaintiff's focus to the extent he was able to return to doing crossword puzzles. (R. 282.) Plaintiff further indicated that Buspar was helpful for his libido. (R. 316.)

Throughout treatment, Plaintiff discussed his inability to interact with others and described negative childhood memories of his family. (R. 257-258.) However, the notes also describe how Plaintiff volunteered with the Red Cross and taught chess to children. (R. 300, 302-303.) The notes further indicate that Plaintiff had his neighbor over for dinner, and that he was engaged with people. (R. 313-314.) Additionally, the progress notes describe how Plaintiff acknowledged that his volunteer work and being with people helped him feel better about himself. (R. 266, 284.) In January 2011, when Plaintiff ceased volunteering at the Red Cross and teaching chess, Hirshman encouraged his involvement with others and socialization as part of the intervention plan. (R. 318.)

Dr. Stein filled out a mental impairment questionnaire on March 1, 2012. (R. 319- 324.) In the report, Dr. Stein diagnosed Plaintiff with intermittent explosive disorder, PTSD and bipolar disorder. (Id.) Additionally, Dr. Stein listed Plaintiff's symptoms supporting the diagnoses as including: anhedonia; decreased energy; emotional withdrawal and isolation; mood disturbances; difficulty thinking or concentrating; sleep disturbance; and intense and unstable interpersonal relationships and impulsive and damaging behavior. (R. 320.) Dr. Stein noted that Plaintiff had "chronic depression and anxiety with intermittent explosive disorders and difficulty managing his anger." (R. 319.) She also found that Plaintiff "misinterprets social interactions," and "goes into

4

rage and is intolerant." (R. 321.) Dr. Stein further stated that the "[p]atient will be vindictive and 'punish' people he believes are 'stupid' or 'incompetent.' [Patient] is cut off emotionally and isolates." (Id.)

In addressing Plaintiff's degree of functional limitations due to his mental impairments, Dr. Stein indicated that Plaintiff's restriction of activities of daily living was moderate, Plaintiff's difficulties maintaining social functioning were extreme, and difficulties in maintaining concentration, persistence or pace were marked. (R. 323.) Additionally, Dr. Stein indicated that Plaintiff would have three or more episodes of decompensation within 12 months, each lasting at least two weeks. (Id.) Finally, Dr. Stein noted that Plaintiff's impairments would cause him to be absent from work for treatment more than four days per month. (Id.)

Dr. J. Theodore Brown, Jr. evaluated Plaintiff at the request of the Social Security Administration on July 27, 2010. (R. 244-248.) Dr. Brown indicated that Plaintiff reported having thoughts of death and suicide, but no plans or intentions. (R. 245.) Plaintiff also reported to Dr. Brown that he was usually tired and fatigued, and that he was sad and depressed. (Id.) In the mental status portion of the exam, Dr. Brown described Plaintiff as pleasant and cooperative. (Id.) Dr. Brown found that Plaintiff could remember three out of three items immediately and five minutes thereafter. (R. 246.) Dr. Brown reported that Plaintiff's mood was somewhat restrained and somber, but that he was oriented and his sensorium was clear. (Id.) Dr. Brown further found that Plaintiff could not count backwards from 100 by seven, but could count backwards from thirty by three. (Id.) Dr. Brown described Plaintiff's speech as "[f]luent and clear," and his thought process as "[c]oherent and goal oriented." (Id.) Dr. Brown rated Plaintiff's cognitive/intellectual functioning as average. (Id.)

In discussing Plaintiff's current level of functioning, Dr. Brown noted that Plaintiff lived

alone; he was able to dress and bathe himself; and he did his own cooking, cleaning, laundry and shopping. (Id.) The doctor further found that Plaintiff managed his own money. (Id.) Dr. Brown noted that Plaintiff's hobbies and interests included playing chess and cards, and doing puzzles. (Id.) Lastly, the doctor stated that Plaintiff reported having no friends and that his family relationships were not good. (Id.)

As to mental impairments, Dr. Brown diagnosed Plaintiff with major depression disorder, generalized anxiety disorder, and intermittent explosive disorder. (R. 247.) In regard to physical impairments, Dr. Brown found Plaintiff suffered from Hashimoto disease, high cholesterol and acute sinusitis. (Id.) Dr. Brown's prognosis for Plaintiff was "[f]air, contingent upon [Plaintiff] continuing to receive and being able to benefit from psychiatric care and treatment." (Id.)

Dr. Martha Torres, a non-examining state agency psychologist, completed a mental residual functional capacity assessment on September 11, 2010. (R. 68-79.) In this assessment, Plaintiff was found to have moderate limitations in some areas of understanding and memory; sustained concentration and persistence; and social interaction and adaptation, but no marked limitations. (R. 74-76.) In her additional explanation of the assessment, Dr. Torres noted that she had considered Plaintiff's reported activities of daily living, Dr. Stein's diagnosis, and Dr. Brown's mental status evaluation. (R. 76.) Dr. Torres concluded that Plaintiff's concentration, pace and persistence, and adaptation were adequate for simple work, noting that he was able to understand, remember and execute simple instructions. (Id.)

Dr. Charles B. Dalton, a non-examining state agency psychologist, completed a mental residual functional capacity assessment on January 22, 2011. (R. 81-91.) In this assessment Dr. Dalton referred to Dr. Brown's mental status examination, indicating that it suggested "intact cognitive functioning with adequate attention, concentration, and mental pesistance [sic] for

simple tasks." (R. 85.) Dr. Dalton considered Plaintiff's functional reports, records from Vantage Health Systems through October 2010, and Dr. Brown's report in reaching his conclusion as to Plaintiff's mental residual functional capacity. (R. 82-84.) Dr. Dalton concluded that the totality of the medical record suggested that Plaintiff had "adequate mental capacity for simple tasks", and that Plaintiff would likely do best in settings with "limited social interactions." (R. 85.) Dr. Dalton found Plaintiff to have the same moderate limitations in certain areas of understanding and memory; sustained concentration and persistence; social interaction; and adaptation as Dr. Torres found in her September 11, 2010 report. (R. 74-76, R.87-89.)

In addition to his medical records, Plaintiff submitted two self-evaluated function reports. The first, dated June 30, 2010, indicates that Plaintiff prepared his own meals, did his own laundry and cleaning, and went grocery shopping. (R. 173-180.) Plaintiff reported difficulties with sleeping and a poor appetite. (R. 174.) He listed reading, listening to the radio and watching TV as his hobbies. (R. 176.) Plaintiff indicated that he participated in these hobbies a few times a week, but that his hobbies were giving him far less pleasure than they once did. (R. 176-177.) Plaintiff explained that he took public transportation because his license was suspended and he did not have a car. (R. 176.) He reported that his illness caused him to "continually misplace money," but that he was able to pay bills, handle a savings account, count change and use a checkbook/money order. (Id.)

In regard to social interactions, Plaintiff reported that he had problems getting along with others because his entire life had been "riddled with confrontations." (R. 177.) Nonetheless, he reported talking to a few people, mostly on the telephone and by email. (Id.) He also indicated that he left the house to go to the library a few times a week, and to attend the many appointments with his psychiatrist, psychologist, welfare worker, physician and food stamp worker. (Id.) In the

second self-evaluated function report, dated November 10, 2010, Plaintiff repeated much of what he wrote in the first report. (R. 194-201.)

At the hearing before the ALJ, Plaintiff testified that he was 54 years old and that he lived alone in Hackensack, New Jersey. (R. 40.) When the ALJ questioned him about his treatment, Plaintiff stated that he was "[a]bsolutely" making progress in therapy, though noted that it was going slower than he expected it to go. (R. 46.) When asked whether the medication was helping, Plaintiff responded, "[w]ell, my anger level is certainly down." (R. 47-48.) Regarding his concentration, Plaintiff testified that he had difficulty concentrating and thinking at times, but noted that Adderall helped, though it made him a little "hyper." (R. 58.) Plaintiff described getting up at 6:30 a.m. four to five days a week and eating three meals a day. (R. 49-50.) He reported that his hobbies were going to the library to use the internet and get books, and watching sports and movies on TV. (R. 52-53.) Additionally, he testified that he did his own grocery shopping and laundry. (R. 55.)

## III.   <u>LEGAL STANDARDS</u>

### A.   **Standard of Review**

This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Courts are not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 359 (3d Cir. 2011); <u>see also</u> 42 U.S.C. § 405(g). The Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Chandler</u>, 667

F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

**B.    Determining Disability**

Pursuant to the Social Security Act, to receive SSI payments, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type

of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the claimant has a severe impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 262 n.2.

## IV.   DISCUSSION

### A.   The ALJ's RFC Determination Is Supported By Substantial Evidence

When determining Plaintiff's RFC the ALJ found as to the exertional demands of work

that Plaintiff could "perform work at all exertional levels." (R. 25.)  Furthermore, the ALJ found that as to the mental demands of work the Plaintiff "is able to perform jobs that are unskilled and repetitive; that are low stress…; that require no work in close proximity (closer than 3-5 feet) to others to avoid distraction; and that require only occasional contact with supervisors, and coworkers, but no contact with the general public." (Id.)  Moreover, the ALJ found that Plaintiff is able to perform the "basic mental demands of unskilled work; he is able to: understand, remember and carry out simple instructions; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting." (Id.)

Plaintiff contends that the ALJ erred in (1) rejecting the opinion of the Plaintiff's treating psychiatrist, Dr. Shani Stein, and (2) failing to assess or comment upon the findings of the consultative examiner, Dr. Theodore Brown.  (Pl. Br. 10-13.)  The court addresses each argument in turn.

### 1.      The ALJ Properly Found that Dr. Stein's Opinion Is Not Controlling

Plaintiff alleges that the ALJ erred by not giving treating psychiatrist Dr. Stein's opinion controlling weight according to the treating physician rule.  (Pl. Br. 10-12.)  The so-called 'treating physician rule' states that the ALJ should give a treating physician's opinion regarding the severity of an alleged impairment "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 416.927(c)(2); see also Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).  Plaintiff argues that Dr. Stein's opinion was entirely uncontroverted, and therefore, the ALJ erred in rejecting it. (Pl. Br. 12.)  Defendant argues that the ALJ's decision to accord less than controlling weight to the opinion of Dr. Stein was appropriate because the objective evidence of the record did not support the doctor's findings.  (Def. Br. 8.)  20 C.F.R.§§ 416.927(c)(3), (4);

11

SSR 96-2p.  The Court agrees.

Dr. Stein's findings include a characterization of Plaintiff's functional limitations as: a moderate restriction of activities of daily living; extreme difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation within a 12 month period, each lasting at least two weeks in duration. (R. 323.)  The ALJ did not afford significant weight to Dr. Stein's opinion that Plaintiff was unable to work, and that Plaintiff was markedly limited in his ability to do simple, unskilled work because, Dr. Stein's opinion appeared to be based on Plaintiff's subjective complaints of pain, and not on objective medical records. (R. 28.)  In considering Plaintiff's subjective complaints of pain, the ALJ found that Plaintiff's allegations were not supported by the objective evidence in the record to the degree claimed. (R. 27.)  The ALJ also found that Dr. Stein's opinion was not supported by other substantial evidence in the record, particularly the progress notes from Dr. Stein's own practice, Vantage Health Systems, as well as Plaintiff's reported daily activities, and the opinion of state examiner Dr. Dalton. (R. 28.)

First, the ALJ found that Dr. Stein's opinion was contradicted by the progress notes from Vantage Health Systems. (Id.)  The ALJ indicated that the progress notes show that Plaintiff's mood, energy and sleep improved when he took the drugs prescribed to him. (R. 26, 27, 257, 262, 278, 316.)  Additionally, the ALJ observed that the progress notes show that Wellbutrin and Adderall helped improve Plaintiff's focus and he could return to doing crossword puzzles. (R. 27, 282, 303.)  The ALJ also noted that the progress notes indicate that Buspar was helpful for Plaintiff's libido. (R. 26, 316.)  Additionally, the ALJ found that the record demonstrates Plaintiff's ability to socialize as shown by his volunteer work at soup kitchens, the Red Cross, and teaching chess to children. (R. 27, 266, 284, 300-303, 309.)  The ALJ commented that the progress

12

notes indicate that Plaintiff felt better when doing service for others. (R. 27, 266, 284, 309.)

Additionally, the ALJ found that even if she were to find Dr. Stein's opinion was consistent with the progress notes from Vantage Health Systems, Dr. Stein's opinion was contradicted by other substantial evidence from the record.  (R. 28.)  The ALJ cited to Social Security Ruling ("SSR") 96-2p which states "[e]ven if a treating source opinion is well-supported, controlling weight, may not be given to the opinion, unless it also is 'not inconsistent' with the other substantial evidence in the case record." (R. 28.)  The ALJ further relied upon SSR 96-2p, which provides "[d]epending upon the facts of a given case, any kind of medical or nonmedical evidence can potentially satisfy the substantial evidence test." (R. 28.)  The ALJ reiterated that "a treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion." (R. 28) (quoting SSR 96-2p).

The ALJ found that Plaintiff's reported activities in his function reports during the application process and in his testimony at the hearing were inconsistent with Dr. Stein's opinion of Plaintiff's inability to perform demands of work at any exertional level defined by the Regulations. (R. 28.)  It is proper for an ALJ to consider whether daily activities contradict a treating physician's opinion.  20 C.F.R. § 416.929(c)(3); see also Russo v. Astrue, 421 F. App'x 184, 191 (3d Cir. 2011) (finding the ALJ's decision to not apply controlling weight to the treating physician's opinion appropriate where the opinion was inconsistent with plaintiff's reported daily activities).  Specifically, the ALJ pointed out that in his function reports and testimony, Plaintiff reported being able to take care of his own hygiene and grooming; prepare his own meals; travel independently by public transportation; perform his own household chores; do his own laundry;

handle his own finances; go outside of his home 4-5 times per week; and spend time reading, playing chess and watching television.  (R. 26, 27, 52-53, 55, 173-180, 194-201.)  Plaintiff also reported talking to a few people, mostly on the telephone and by email, and specifically reported talking to his brother once a month.  (R. 26, 27, 56, 177.)  These reported activities are inconsistent with Dr. Stein's opinion.

In deciding not to accord Dr. Stein's opinion significant weight, the ALJ also found that Dr. Stein's opinion was inconsistent with the opinion of state agency psychologist, Dr. Dalton.  (R. 28.)  When examining the record, an ALJ is not foreclosed from relying upon a non-examining physician's opinion. Moody v. Barnhart, 114 F. App'x 495, 501 (3d. Cir 2004) (citing 20 C.F.R. § 404.1527(d)); see also 20 C.F.R. § 416.927(d) (stating the same legal standard).  "The Regulations allow the ALJ to rely upon medical opinions and specifically provide that 'all evidence from nonexamining sources [is] opinion evidence.'" Id. (quoting 20 C.F.R. § 404.1527(f) (reclassified as 20 C.F.R. § 404.1527(e)); see also 20 C.F.R. § 416.927(e) (stating the same legal standard).  When the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)).  If there are conflicting opinions of psychiatrists dealing with a plaintiff's mental impairment, the non-treating psychiatrist's opinion may be used as substantial evidence if it conflicts with the treating psychiatrist's opinion. Brown v. Astrue, 649 F.3d 193, 196-97 (3d Cir. 2011) ("Although there was record evidence from a treating psychiatrist suggesting a contrary conclusion, the ALJ is entitled to weigh all evidence in making its finding").

According to Dr. Dalton's report, Plaintiff had the "concentration, persistence pace and

adaptation adequate for simple work." (R. 89.)  Dr. Dalton's report also indicates that Plaintiff had the "adequate mental capacity for simple tasks" (R. 85), and that he would "likely work best in settings with limited social interactions." (Id.)  Plaintiff argues that Dr. Dalton conducted his examination during the earlier part of the appeals process and at that time he did not have access to medical records submitted shortly before the hearing.  (Pl. Br. 12.)  However, Dr. Dalton considered everything in the medical record up to that point, including an assessment by state agency psychologist Dr. Torres, Plaintiff's June 2010 and November 2010 function reports, Dr. Brown's July 2010 report, Dr. Stein's April 2010 report, as well as the progress notes from Vantage Health Systems through October 2010.  (R. 82-84.)  The later medical records did not add significant information that would render Dr. Dalton's opinion unreliable.  As discussed above, the additional progress notes from Vantage Health Systems written after Dr. Dalton's assessment contradict Dr. Stein's opinion as they express an improvement in Plaintiff's mental state, and contain a discussion of Plaintiff's ability to interact with others through his volunteer work.  (R. 275-318.)  Additionally, Dr. Dalton had Dr. Stein's April 2010 report in which she indicated Plaintiff was unable to work for twelve months (R. 269), and even considering that report Dr. Dalton reached a conclusion that Plaintiff had the "concentration, persistence pace and adaptation adequate for simple work." (R. 89.)  Dr. Dalton's opinion was based on sufficient review of the record and the ALJ was correct in considering and crediting the findings of Dr. Dalton.  (R. 28.)

Additionally, the ALJ properly considered the 20 C.F.R. §416.927 factors in weighing Dr. Stein's opinion.  If the treating physician's opinion is not given controlling weight, the ALJ applies the factors listed in 20 C.F.R. §§ 416.927(c)(1)-(6) to determine the appropriate weight to give a

medical opinion.[4] The court finds that the ALJ properly considered these factors in weighing Dr. Stein's opinion.

The ALJ must consider all of the evidence and may weigh the credibility of that evidence, but must give some indication of the evidence that was rejected and the reasoning for rejecting it. See Burnett v. Comm'r of Soc. Sec., 220 F. 3d 112, 121 (3d Cir. 2000); see also Fargnoli, 247 F. 3d at 42-44 (remanding the ALJ's decision for failure to explain the weight given to evidence from claimant's treating physicians.)  In regard to granting greater weight to a non-examining source than to a treating source, an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, or may accord it more or less weight depending on the extent to which supporting explanations are provided.  Santiago v. Barnhart, 367 F.Supp.2d 728, 736 (E.D. Pa. 2005) (quoting Plummer, 186 F.3d at 429).

The ALJ's decision not to accord Dr. Stein's opinions controlling weight was supported. As set forth above, the ALJ found that Dr. Stein's opinions were inconsistent with the record.  The ALJ specifically noted that Dr. Stein's opinions were inconsistent with the progress notes from Vantage Health Systems, as well as Plaintiff's reported daily activities, and the opinion of state examiner Dr. Dalton.  (R. 28.)  See 20 C.F.R. § 416.927(c)(4).  Additionally, as to the length of treatment and frequency of examination, the ALJ noted that throughout Plaintiff's treatment at Vantage Health Systems, Plaintiff was meeting weekly for individual therapy sessions not with Dr. Stein, but rather with Hetty Hirshman.  (R. 28.)  20 C.F.R. § 416.927(c)(2)(i).

Thus, the ALJ followed the standard set forth in Burnett and properly supported her

---

[4] These factors include: (1) examining relationship; (2)(i) length of treatment relationship and frequency of examination; (2)(ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency of the record; (5) specialization of the physician; and (6) other factors, such as any other information which would tend to support or contradict the medical opinion. See 20 C.F.R. § 416.927(c)(1)-(6).

decision to give Dr. Stein's opinion little weight. Accordingly, the ALJ appropriately weighed the factors, and her decision is supported by substantial evidence.

### 2.   The ALJ Did Not Err In Failing To Assess or Comment Upon the Findings of Consultative Examiner Dr. Theodore Brown

The plaintiff argues that the ALJ erred by failing to assess or even comment upon the findings of the psychiatric consultative examiner, Dr. Brown. (Pl. Br. 13.)  Plaintiff claims that Dr. Brown's report (R. 244-248) corroborated Dr. Stein's opinion, which the ALJ rejected. Therefore, Plaintiff argues that the ALJ was required to have provided some articulation and comment on such evidence. (Pl. Br. 13.)  Defendant responds that by Plaintiff's own admission, Dr. Brown's findings did not fully support the opinion of Dr. Stein, and notes that the ALJ discussed at length Dr. Dalton's opinion, which incorporated the findings of Dr. Brown. (Def. Br. 9) (R. 28, 85, 87, 89.)

Plaintiff argues that Dr. Brown's report "to some extent" corroborates the findings of Dr. Stein, in that Dr. Brown diagnosed Plaintiff with severe major depression, generalized anxiety disorder and intermittent explosive disorder with symptoms of melancholy, poor concentration, and inability to socialize due to explosive disorder. (Pl. Br. 13) (citing R. 245, 247.)  Plaintiff relies on Cotter v. Harris, where the medical testimony that the ALJ failed to explain or acknowledge was "probative and supportive of [the plaintiff's] claim which conflicted with the medical testimony accepted by the ALJ." 642 F.2d 700, 706-07 (3d Cir. 1981).  Here, however, Dr. Brown's report is far more supportive of the ALJ's findings than it is "probative and supportive" of Plaintiff's claim.  The report does not conflict with the ALJ's finding that Plaintiff suffers from major depression, intermittent explosive disorder, bi-polar disorder, and post-traumatic stress disorder. (R. 23.)  Dr. Brown indicated that Plaintiff was pleasant and cooperative.

(R. 245.) Dr. Brown found that Plaintiff could remember three out of three items immediately and five minutes thereafter. (R. 246.) Additionally, Dr. Brown described Plaintiff's speech as "[f]luent and clear," and his thought process as "[c]oherent and goal oriented," rating his cognitive/intellectual functioning as average. (Id.) Dr. Brown's prognosis for the Plaintiff was "[f]air, contingent upon [Plaintiff] continuing to receive and being able to benefit from psychiatric care and treatment." (R. 247.)

Furthermore, as Defendant points out, the ALJ discussed her consideration of Dr. Dalton's opinion, which was based in part on the findings of Dr. Brown. (Def. Br. 9.) Dr. Dalton's report specifically states that he granted "great weight" to the opinions of Dr. Brown and Dr. Stein in reaching his conclusions. (R. 87.) Dr. Dalton also indicated that Dr. Brown's mental status evaluation suggested that Plaintiff had "intact cognitive functioning, with adequate attention, concentration, and mental pesistance [sic] for simple tasks." (R. 85.)

Accordingly, the ALJ's failure to specifically discuss Dr. Brown's report was not error.

**B.    The Hypothetical Considered by the ALJ Accurately Reflected Plaintiff's Impairments**

Plaintiff argues that the ALJ should have included the more limiting hypotheticals which were posed to VE, Rocco Meola, at the hearing in her decision. (Pl. Br. 13-15.) Defendant responds that the ALJ was not required to include in her hypotheticals limitations that she reasonably rejected. (Def. Br. 10 (citing Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004); Rutherford v. Barnhart, 399 F. 3d 546, 557 (3d Cir. 2005))). Although the VE testified to more stringent limitations, the ALJ "[did] not find these more stringent limitations to be applicable under the record." (R. 30.)

The hypothetical questions that the ALJ poses must "accurately convey to the vocational

expert all of a claimant's credibly established limitations." <u>Rutherford</u>, 399 F.3d at 554.  The

ALJ's hypothetical questions "must reflect all of a claimant's impairments that are supported by

the record." <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir.1987).  If the hypothetical question

does not include "medically undisputed evidence of specific impairments" in the record then "the

expert's response is not considered substantial evidence." <u>Burns v. Barnhart</u>, 312 F.3d 113, 123

(3d Cir. 2002) (citing <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984).  An ALJ is not

required, however, "to submit to the vocational expert every impairment *alleged* by a claimant."

<u>Rutherford</u>, 399 F.3d at 554 (emphasis in original).

     In her first hypothetical to the VE, the ALJ asked whether there would be jobs available

for someone of Plaintiff's age, educational background and work history assuming that:

> this person can perform work at all exertional levels, but because of mental health
> symptoms can only perform work that's simple and unskilled, jobs that are low stress, that
> is the jobs require only an occasional change in work setting during the workday, only
> occasional change in decision making required during the workday, and if production
> based, the production is monitored at the end of the day as opposed to consistently
> throughout the course of the day. This person can only perform work that is not in close
> proximity to others to avoid distraction, and by close proximity I mean closer than three to
> five feet. And the person can only have occasional contact with supervisors and coworkers,
> but no contact with the general public. (R. 61.)

In response to this hypothetical, the VE found that Plaintiff could not perform his past relevant

work, but could perform jobs such as ticketer, weigher, and decal applier.  (R. 62.)

     The ALJ then posed additional hypotheticals reflecting limitations set forth in Dr. Stein's

report.  (R. 62-64.)  The additional hypotheticals asked the VE to assume that the person (1)

"because of difficulty with concentration because of mental health symptoms, and the side effects

of medication could only concentrate for six out of eight hours in the typical work day" (R. 63);

(2) would need to be absent from work more than four days per month (<u>id.</u>); and (3) would have

"no useful ability to respond appropriately to criticism from supervisors and contact with

coworkers." (Id.)  In response to each of these additional hypotheticals, the VE found that a person with such limitations would be unable to maintain employment. (R. 63-64.)

At step three of the sequential evaluation process, the ALJ determined that Plaintiff had the following impairments: (1) mild restriction in activities of daily living; (2) moderate limitation in social functioning; and (3) moderate deficiencies of concentration, persistence and pace. (R. 23-24.)  Therefore, the ALJ's hypothetical must have reflected all three of these impairments.

The Court finds that the first hypothetical which limited the jobs that Plaintiff could perform to those that are "simple and unskilled," "low stress," "not [performed] in close proximity to others to avoid distraction," and require only "occasional contact with supervisors and coworkers, but no contact with the general public," (R. 61) accurately conveyed all of Plaintiff's limitations as reflected in the RFC.  The hypothetical required the job to be "simple and unskilled," as well as "low stress," which conveyed the moderate deficiencies plaintiff has in concentration, persistence and pace. See McDonald v. Astrue, 293 F. App'x 941, 946 (3d Cir. 2008) (hypothetical limiting claimant to "simple, routine tasks" was adequate to account for moderate limitations in claimant's ability to maintain concentration, persistence, and pace); Menkes v. Astrue, 262 F. App'x 410, 412 (3d Cir. 2008) (hypothetical including the limitation "simple routine task" or "unskilled jobs" adequately accounted for claimant's moderate difficulties in concentration, persistence and pace).

Additionally, the ALJ's hypothetical set a limitation requiring Plaintiff not work "in close proximity to others to avoid distraction," meaning not "any closer than three to five feet." (R. 61.) This limitation accounted for Plaintiff's predisposition to distraction, and conveyed Plaintiff's issues with concentration. See Fazzolari v. Astrue, No. Civ. 12-1309, 2014 WL 644725, at *9 (D.N.J. Feb. 18, 2014) (finding that the ALJ's use of the phrase "unskilled" and "repetitive" labor,

in conjunction with noting Plaintiff's tendency toward "distraction" and the need to limit interaction with others to occasional contact, accurately described the functional consequence of a marked limitation in Plaintiff's ability to sustain concentration, persistence and pace, which is the level of limitation Plaintiff claimed the ALJ had found).  Furthermore, the limitations regarding the proximity in which Plaintiff could be to others while working, and limiting him to only occasional interaction with supervisors and co-workers, and no interaction with the general public, accurately portrayed Plaintiff's moderate limitations in social functioning.  (R. 21.)

The more limiting hypotheticals posed at the hearing that the ALJ did not discuss in her decision were based on Dr. Stein's findings, but the ALJ found that Dr. Stein's findings were not supported by the record as a whole.[5] The ALJ was not required to incorporate the more limiting hypotheticals into her decision because her RFC assessment did not include a finding that Plaintiff could (1)"only concentrate for six out of eight hours in the typical work day"; ( 2) would need to be absent from work more than four days per month; and (3) would have "no useful ability to respond appropriately to criticism from supervisors and contact with coworkers."  (R. 25.)  See Johnson v. Comm'r of Soc. Sec., 398 F. App'x 727, 736 (3d Cir. 2010)  (finding the ALJ did not need to make explicit his reason for not considering a second hypothetical which included a restriction which was not included in the ALJ's RFC since that hypothetical was of no relevance); Fazzolari, 2014 WL 644725, at *9 n.4 (finding the ALJ was not required to consider the VE's answer to a second hypothetical of whether jobs existed for someone who was only capable of concentrating 1/3 of the workday because the ALJ's RFC assessment did not include a finding that Plaintiff could only concentrate for 1/3 of the workday).

If an ALJ poses a hypothetical to a VE that "fairly set[s] forth every credible limitation [of

---

[5] See supra Part IV.A.1

the claimant] established by the physical evidence," the VE's testimony as to the jobs such a person could perform is by itself substantial evidence to carry the government's burden at step five. Plummer, 186 F.3d at 431-32. The ALJ's first hypothetical question to the VE accurately conveyed Plaintiff's limitations and therefore, the VE's testimony regarding other work provided substantial evidence for the ALJ's conclusion

## V.   **CONCLUSION**

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed. An appropriate order accompanies this Opinion.


DATED: _December 19, 2014_

**CLAIRE C. CECCHI, U.S.D.J.**